RECEIVED
IN LAKE CHARLES, LA
APR 29 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| GEOFFREY P. CUMMINGS<br>FED. REG. # 48227-018 | CIVIL ACTION NO. 08-1159<br>SECTION P |
| VS. | JUDGE TRIMBLE |
| WARDEN, FCI OAKDALE | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Geoffrey P. Cummings filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 on August 6, 2008. Petitioner is a prisoner in the custody of the Federal Bureau of Prisons (BOP). He is incarcerated at the Federal Corrections Institute, Oakdale (FCIO), however, he complains that his due process guarantees were violated in a prison disciplinary proceeding that occurred while he was incarcerated at the Federal Prison Camp, Pensacola, Florida in December 2007. Petitioner seeks restoration of good time credits which were forfeited as a result of the disciplinary conviction. He also prays for a transfer back to a prison in Florida and additional credits toward his sentence.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

### *Background*

Petitioner is an inmate in the custody of the BOP. He is incarcerated at the FCIO where he is serving concurrent 97 month sentences imposed in August 2006 by the United States District Court for the Middle District of Florida in the case *United States v. Geoffrey Paul Cummings*, 8:05-cr-00435.

Prior to his transfer to FCIO, petitioner was incarcerated at the Federal Prison Camp, Pensacola, Florida. On September 2, 2007 petitioner was charged with possession of unauthorized items (Marlboro cigarettes and smokeless tobacco) and possession of currency ($220 in cash) in violation of Prison Regulations 303 and 305. Petitioner was ordered held in a Special Housing Unit (SHU) at the federal prison in Marianna, Florida – a 2 ½ hour drive from Pensacola. Doc. 5, ¶¶ 1-8; *see also* Doc. 3, Ex. 2a, ¶ 11. The incident report charging petitioner with the disciplinary violations was delivered to petitioner at 8:12 p.m. on September 2, 2007. Doc. 3, Ex. 2a, ¶14. At the same time he was advised of his rights. Upon conclusion of this process, he replied, "This is a set-up, I was strip searched and nothing was found on me." *Id.* ¶25. Petitioner requested witnesses – inmates Tysinger, Deese, and Fulford. According to the officer, when interviewed, Deese stated "I don't know nothing." Fulford stated, "I got searched and left the room." Tysinger provided a written statement as follows:

> I, Thomas R. Tysinger was present during a search of my room. It was right after the 4:00 count. Officer Merriweather came into the room with mail. He asked if there was a inmate present who was not in our room. He proceeded to tell everyone not to move. He proceeded to check inmates. He came to inmate Smith and stripped searched him. He turned around and had 100.00 in his hand. I didn't see where he got it from. Officer Collett searched inmate Cummings and told him to go outside in the hallway afterwards. Officer Merriweather said, 'Wait Cummings have a seat on your bed. Everyone else went out in the hallway. When Merriweather came in the room he told no one to move Smith, Cummings, and Deese were on the left side of the room. Cummings sleeps on the right side of the room. He was nowhere near his rack.

Doc. 3, Ex. 2B, at 10.

On September 11, 2007 an FPC officer presented a memorandum seeking an extension of time to conduct a UDC hearing. According to the memorandum,

> The inmate received a copy of the charges on September 2, 2007 at 8:12 P.M. The inmate was removed to FCI Marianna, FL approximately 2 ½ – 3 hours from the institution.

> The UDC hearing has not been completed within 3 working days due to the removal of the inmate from the institution. Due to scheduling, late nights, and scheduled program review teams, we were not able to assemble a UDC panel of 2 certified staff members to be away from the institution for the full day. The delay places us beyond the normal 5 working day limitation of policy. The inmate will be provided a copy of this memorandum, and a copy will become a part of the report file.
>
> As per P.S. 5270.07, Inmate Discipline and Special Housing Units, the Warden's approval is required to exceed 5 working days. We are asking for approval to proceed with a UDC hearing.

Doc. 3, Ex. 5, at 16.

The request for extension was approved by Warden Scott P. Fisher. *Id.*

On September 13, 2007 petitioner was advised of his rights at a disciplinary hearing and acknowledged receipt of same. Doc. 3, Ex. 3a, at 12. Petitioner requested appointment of a staff representative and indicated his desire to call Christopher Smith, his cell mate, as a witness. Petitioner indicated that Smith would testify that "nothing [was] found during [the] strip search." Doc. 3, Ex. 3b, at 13.

The UDC committee convened on September 13, 2007. Petitioner advised the committee that he did not wish to make any additional statement and the committee referred the charges to the Disciplinary Hearing Officer (DHO) for further hearing. Doc. 3, Ex. 4, at 15.

The DHO convened a hearing on December 21, 2007. Zannie White appeared on petitioner's behalf as staff representative. Petitioner was again advised of his rights; he acknowledged that he understood his rights and denied the charges. He claimed,

> I never had money or cigarettes. I was strip searched by Officer Meriweather and pat searched by Officer Coulliette. They found nothing on me and sent me outside the room. About 30 minutes later they came and got me and took me to R & D. I didn't know what I was charged with until they brought the shot to R & D.

According to the DHO Report, petitioner's witness – Christopher Smith – provided the following statement on petitioner's behalf,

> I saw him being pat searched by Officer Coulliette and nothing was found on him. I didn't see anything on his bed either. Officer Meriweather was strip searching me while Officer Coulliette was pat searching Cummings and they didn't find anything.

In addition, the following evidence was considered: photographs of the cash, cigarettes, and tobacco; the statement of inmate Ernie Fulford dated September 26, 2007, and statements from Officers Coulliette and Meriweather. The DHO made the following observations and findings of fact:

> The DHO finds inmate Geoffrey Cummings . . . committed the prohibited acts . . . . These finding are based upon facts stated in section 11 of incident report #1639792. It states, on 09-02-07, at approximately 04:45 pm, the Reporting Staff Member conducted a pat search of inmate Cummings. The Reporting Staff Member found on his person two (2) one-hundred dollar bills and two (2) twenty dollar bills. He also discovered inmate Cummings sitting on 35 Marlboro cigarettes and one (1) can of 'Grizzy Straight' tobacco.
>
> The DHO notes inmate Cummings has denied these allegations at each stage of the disciplinary process. He has even alleged he was 'set up' by staff. The DHO considered the statement of his witness Christopher Smith. However, it should be noted inmate Smith was also alleged and found to have unauthorized money this same date on his person which minimizes his credibility. Inmate Cummings requested a statement from inmate Fulford who also stated money was found but he didn't know who had it. The DHO considered as evidence [sic] inmate Cummings posed a series of questions to the Reporting Officer (Officer Meriweather) and Officer Coulliette who was also present during this shakedown. None of the responses they provided changed the outcome of the allegation.[1]
>
> Specifically, the Reporting Officer did not recant his initial allegations and no new information was presented by Officer Coulliette which contradicted the initial allegations of Codes 305 and 303.
>
> The DHO considered as evidence [that] staff have a legal obligation to ascertain the facts and present them in a truthful manner. Inmate Cummings has not presented any information that contradicts the allegations of the Reporting Officer that he had both tobacco products and money on his person when pat searched.

---

[1] The statement of Officer Coulliette was as follows, "I was called to the room to assist Officer Meriweather. Officer Meriweather explained to me that the inmates needed to be searched. I secured the room to avoid inmate movement. I observed Officer Meriweather find case money on inmate Smith . . . . After the inmates were searched, I left the room to get my flashlight. I returned back to the room and Officer Meriweather said he had got cash and tobacco off of inmate Cummings . . . ." Doc. 3, Ex. 2c, at 11.

> Therefore, based upon the greater weight of evidence which are the direct observations of staff and the physical evidence, the DHO finds inmate Geoffrey Cummings #48227-018 committed the prohibited acts of Code 303, Possession of Unauthorized Money and Code 305, Possession of Anything Not Authorized. Neither money nor tobacco products are sold to or authorized for inmate retention. The DHO also notes the UDC hearing was conducted 11 days after staff became aware of this incident. In a memo dated 09-11-07, Warden Scott Fisher authorized the extension of the UDC hearing to be held beyond the 5 day limit.

Doc. 3, Ex. 1.

Based on the foregoing, the DHO confiscated the cash with regard to the violation of Code 303, disallowed 13 days of good conduct time, and ordered a disciplinary transfer for the violation of Code 305. Petitioner was then advised of his appeal rights. *Id.*

In due course, petitioner's Regional Administrative Remedy Appeal No. 482184-R1 was denied on February 26, 2008 as follows:

> On review it appears the DHO substantially complied with Bureau regulations, based the decision on the greater weight of the evidence, and imposed appropriate sanctions. Specifically you complain the Unit Discipline Committee (UDC) hearing was not conducted in a timely manner. Program Statement 5270.07, Inmate Discipline and Special Housing Units, Chapter 6, Page 1, states, "Each inmate so charged is entitled to an initial hearing before the UDC, ordinarily within three work days from the time staff became aware of the inmate's involvement." Chapter 6, page 5 states, "The Warden's approval is required for any extensions beyond five work days." Although you are correct it did not occur within the initial time frame recommended by policy, the Warden approved the extension beyond five days and you have failed to indicate how this delay hindered your ability to defend yourself. Additionally, policy does not restrict the Warden's approval to a specific period of time. We find the DHO outlined in detail the evidence utilized to find you committed the prohibited act and the reasons he did not believe your defense.

Doc. 1; Doc. 4, Ex. 1

Petitioner was then instructed to appeal the denial to the Office of General Counsel. *Id.* However, petitioner has not provided proof that he sought further review at the national level prior to filing his petition in August 2008.[2]

*Law and Analysis*

Federal prisoners have liberty interests in their accumulated good-time credit. See *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000). Therefore, since petitioner claims that he lost good time credits, the due process analysis approved by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) and *Superintendent, Mass. Corr. Inst. v. Hill* (*Hill*), 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985), governs this review of the contested disciplinary proceeding.

In *Wolff*, the Court held although the rights of a prisoner "may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." 418 U.S. at 555, 94 S. Ct. at 2974, 41 L. Ed. 2d 935. Nevertheless "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556, 94 S. Ct. at 2974, 41 L. Ed. 2d 935. Accordingly, in order for a prison disciplinary proceeding to comport with the requirements of due process the following minimal procedural safeguards must be afforded: (1) adequate notice of the alleged violation; (2) an opportunity to

---

[2] Because petitioner has not tendered evidence to show that he sought further administrative review, petitioner's *habeas corpus* petition may be subject to dismissal for failure to exhaust administrative remedies. The BOP provides a 3-step administrative procedure for inmates who seek formal review of their complaints. A complainant is required to seek review at the national level (BOP National Inmate Appeals) prior to bring suit in the district court. See 28 U.S.C. §§ 542.10-542.19. Only when "the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action", are inmates exempted from the requirement that they exhaust administrative remedies prior to proceeding with a *habeas* action in court. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir.1994) (citation omitted). Such exceptions to the exhaustion requirement "apply only in 'extraordinary circumstances,' and [petitioner] bears the burden of demonstrating the futility of administrative review." *Id.* (citations omitted). Should petitioner object to this Report and Recommendation, he should also provide evidence that he exhausted his claim at the National level prior to filing the instant petition.

present evidence, (3) written findings in support of the ruling; and (4) the requirement that upon review, "some evidence" support the ruling. *Hill*, 472 U.S. at 454, 105 S. Ct. at 2744, 86 L. Ed. 2d 356. With regard to the evidence necessary to support the disciplinary conviction, the Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455, 105 S. Ct. at 2744, 86 L. Ed. 2d 356.

Petitioner supplied copies of the pertinent DHO documents, all of which have been catalogued herein. These exhibits establish that petitioner was afforded all the process he was due. To the extent that petitioner maintains that he was in any way deprived of liberty without due process, his claim is not supported by either the facts or the law. Instead, petitioner was provided notice of the violation within hours of the alleged infraction. Doc. 3, Exs. 2a, 3b, 4.[3] Petitioner was advised of his rights, including the right to present evidence, and acknowledged receipt on September 13. Doc. 3, Ex. 3a. Petitioner was provided the assistance of staff counsel at the hearing and was allowed to present evidence in his defense. Doc. 3 Exs. 1, 2b, and 2c. Petitioner received the written findings in support of the DHO's ruling. Doc. 1, Ex. 1. Finally, the testimony of Corrections Officer Meriweather, coupled with the physical evidence, all as reported by the DHO, establishes sufficient evidence to support the DHO ruling. *Id.*

*Conclusion*

Considering the foregoing,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE** for failing to state a claim for which relief might be granted.

---

[3] To the extent that petitioner claims that the extension of UDC time limitations deprived him of some right guaranteed under the Constitution, he fails to state a claim. As shown above, the prison authorities complied with all appropriate federal regulations and obtained the Warden's approval for the delay which was occasioned by logistics. Doc. 3, Ex. 5. In any event, petitioner has not shown how this delay resulted in any prejudice to him.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Thus done and signed in chambers, in Lake Charles, Louisiana this 29th day of April, 2009.

KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE